JOSEPH H. HUNT
Assistant Attorney General
MARY M. ENGLEHART
Trial Attorney, Maryland Bar #0712110232
Consumer Protection Branch
United States Department of Justice
450 Fifth St., N.W., Suite 6400 South
Washington, D.C.  20530
Tele:  202-307-0088/Fax:  202-514-8742
Megan.Englehart@usdoj.gov

JEAN E. WILLIAMS
Deputy Assistant Attorney General
MARISSA A. PIROPATO, Trial Attorney (Mass. Bar #651630)
FREDERICK H. TURNER, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C.  20044-7611
Tele:  202-305-0470/Fax:  202-305-0506 (Piropato)
Tele:  202-305-0641/Fax:  202-305-0275 (Turner)
Marissa.piropato@usdoj.gov; Frederick.turner@usdoj.gov

*Attorneys for Federal Defendants*

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES, *et al.*, | Case No. 3:16-cv-01574-VC |
| *Plaintiffs,* | |
| v. | **FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE EXTRA-RECORD EVIDENCE** |
| ALEX M. AZAR II, *et al.*, | |
| *Defendants,* | Date: August 6, 2020 |
| and | Time: 10:00 a.m. |
| | Location: Courtroom 4 – 17th Floor |
| AQUABOUNTY TECHNOLOGIES, INC., | Judge: Hon. Vince Chhabria |
| *Intervenor-Defendant.* | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                       **Page**

*Alliance for Wild Rockies v. Kruger*,
    950 F. Supp. 2d 1172 (D. Mont. 2013) .............................................................................. 3

*Center for Biological Diversity v. Wolf*,
    2020 WL 1275729 (D. Ariz. Mar. 17, 2020) ................................................................. 3, 5

*Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*,
    384 F. Supp. 3d 1111 (N.D. Cal. 2019) .............................................................................. 5

*Ellis v. Housenger*,
    2015 WL 3660079 (N.D. Cal. June 12, 2015) .................................................................... 5

*Hoopa Valley Tribe v. NMFS*,
    230 F. Supp. 3d 1106 (N.D. Cal. 2017) .............................................................................. 4

*Karuk Tribe of California v. U.S. Forest Serv.*,
    379 F. Supp. 2d 1071(N.D. Cal. 2005) ............................................................................... 4

*Karuk Tribe of California v. U.S. Forest Serv.*,
    640 F.3d 979 (9th Cir. 2011) ............................................................................................... 4

*Karuk Tribe of California v. U.S. Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2014) ............................................................................................. 4

*Lands Council v. Powell*,
    395 F.3d 1019 (9th Cir. 2006) ............................................................................................. 3

*Ninilchik Traditional Council v. United States*,
    227 F.3d 1186 (9th Cir. 2000) ............................................................................................. 4

*Northwest Coalition for Alternatives to Pesticides v. EPA*,
    920 F. Supp. 2d 1168 (W.D. Wash. 2013) .......................................................................... 6

*Pacificans for a Scenic Coast v. California Department of Transportation*,
    204 F. Supp. 3d 1075 (N.D. Cal. 2016) .............................................................................. 5

*Pub. Power Council v. Johnson*,
    674 F.2d 791 (9th Cir. 1982) ............................................................................................... 2

*Sierra Club v. McLerran*,
    2012 WL 5449681(W.D. Wash. Nov. 6, 2012) .................................................................. 3

*United States v. Carlo Bianchi & Co.*,
    373 U.S. 709 (1963) ........................................................................................................ 4

*Washington Toxics Coalition v. EPA*,
    413 F.3d 1024 (9th Cir. 2005) .................................................................................... 2, 3

*Western Watersheds Project v. FWS*,
    535 F. Supp. 2d 1173 (D. Idaho 2007) ............................................................................ 7

*Western Watersheds Project v. Kraayenbrink*,
    538 F. Supp. 2d 1302 (D. Idaho 2008) ........................................................................ 2, 3

*Western Watersheds Project v. Kraayenbrink*,
    632 F.3d 472 (9th Cir. 2011) .......................................................................................... 2

*WildEarth Guardians v. Fed. Emergency Mgmt. Agency*,
    2011 WL 905656 (D. Ariz. Mar. 15, 2011) ................................................................ 6, 9

*WildEarth Guardians v. Jeffries*,
    370 F. Supp. 3d 1208 (D. Or. 2019) ............................................................................... 5

*WildEarth Guardians v. U.S. Forest Serv.*,
    2011 WL 11717437 (D. Ariz. Apr. 26, 2011) ................................................................ 5

*Yurok Tribe v. Bureau of Reclamation*,
    231 F. Supp. 3d 450 (N.D. Cal. 2017) ............................................................................ 4

**Statutes**

5 U.S.C. § 706 ............................................................................................................... 3, 4

**Regulations**

21 C.F.R. § 528.1092(d) .................................................................................................... 8

## INTRODUCTION

Federal Defendants moved to strike the 35 extra-record documents that Plaintiffs attached to a Declaration submitted in conjunction with their motion for summary judgment and to strike any portion of their motion that cites or relies upon this evidence because Plaintiffs failed to meet *their* burden of showing why the Court should consider them. ECF No. 246 (Mot.). Although Plaintiffs have acknowledged the inconsistencies with the documents they attached, ECF No. 252 (Pls. Opp.) at 1 n.1, they must do more than cure the defects with their Declaration and summary judgment citations. Rather than moving this Court to consider extra-record evidence and providing a thorough explanation for how or why it should consider each of the 35 documents, Plaintiffs have advanced a flawed argument about the scope of review for Endangered Species Act (ESA) citizen suit claims, misread the case law, and erroneously suggested that merely "citing, discussing, and quoting" from the extra-record documents is sufficient grounds for a court's consideration of documents. *See id*. at 5. If adopted, Plaintiffs' approach would create uncertainty about whether and to what extent a court may consider extra-record evidence in its review of agency action and would essentially allow an "ESA exception" to subsume the record review rule. Further, Plaintiffs' conclusory explanations about the documents' alleged relevance are thin reeds on which to rest an argument that the Court should consider them. *See id.* at 5-15. Plaintiffs continue to fall short in meeting their burden on the extra-record materials, and thus the Court should grant Federal Defendants' Motion.

## ARGUMENT

Plaintiffs' response to the Motion to Strike goes awry from the start. Plaintiffs begin by suggesting that Federal Defendants should not be able to challenge their use of extra-record documents because of two early indicators from the Court—a footnote in an August 2016 Order

1

and the grant of third-party discovery. *See id.* at 2. However, a reference to *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011), early in the case and before the record was lodged, does not automatically mean that any extra-record evidence will be considered. *Kraayenbrink* does not eliminate the record review principle altogether; a party still must justify the court's reliance on documents outside the record. Mot. at 4-5; *see infra*. Further, the fact that the Court granted Plaintiffs' request to conduct third-party discovery did not, *ipso facto*, relieve Plaintiffs of their obligation to demonstrate why evidence outside of the record should be admissible. *See Pub. Power Council v. Johnson*, 674 F.2d 791, 793 (9th Cir. 1982) (allowing discovery to proceed, but noting that the agency "eventually may prevail as to its position of what should constitute the record upon review" and "reserving for the panel on the merits the ultimate determination of what should constitute the record"). Plaintiffs acknowledged as much when they stated that the documents they received "*may* be admissible as extra-record materials in support of Plaintiffs' ESA claim." ECF No. 75 at 15 (emphasis added).

Plaintiffs' next assertion, that Ninth Circuit precedent "plainly decides this question," cannot be reconciled with the case law they rely on. *See* Pls. Opp. at 2. In *Washington Toxics Coalition v. EPA*, 413 F.3d 1024 (9th Cir. 2005), the Ninth Circuit did not discuss the appropriate scope of review in ESA cases. Instead, it held that "suits to compel agencies to comply with the substantive provisions of the ESA arise under the ESA citizen suit provision, and not the APA [Administrative Procedure Act]" and therefore, are not required to challenge "final agency action" in accordance with 5 U.S.C. § 704. *Washington Toxics*, 413 F.3d at 1034. In *Kraayenbrink*, both the Ninth Circuit and the district court reviewed an administrative record, which was supplemented with limited extra-record material described by the court as "relevant expert analysis." 632 F.3d at 497-98; *W. Watersheds Project v. Kraayenbrink*, 538 F. Supp. 2d

1302, 1322-23 (D. Idaho 2008). The admission of such evidence appears to be consistent with the ordinary APA rule of allowing limited supplementation of the record where the evidence is necessary to determine whether the agency has considered all relevant factors. These two cases do not overturn decades of precedent requiring the Court to review ESA cases in accordance with APA Section 706. Moreover, case law since *Kraayenbrink* suggests that the implications of that Ninth Circuit decision are anything but clear. In *Alliance for Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1177 (D. Mont. 2013), the district court noted that "*Kraayenbrink* leaves us uncertain" about whether and to what extent courts are to apply the APA record review rule and then determined that the better view is that "the traditional four exceptions [to the record review rule] still apply to plaintiffs' request for supplementation of the administrative record for ESA claims." (citation omitted). The court in *Center for Biological Diversity v. Wolf*, No. 4:17-cv-00163-TUC-CKJ, 2020 WL 1275729, at *4 (D. Ariz. Mar. 17, 2020) reviewed "contradictory authority" on *Kraayenbrink*'s implications and found that the Ninth Circuit merely "ratified the district courts' use of discretion . . . to supplement the record." (citation omitted).

Plaintiffs chart a similarly misguided path when they assert that Federal Defendants have conflated the standard of review and the scope of review.[1] Pls. Opp. at 3-4. Contrary to Plaintiffs' suggestion, the standard and scope of review are inextricably linked, as indicated by precedent and the language of the APA. Unless a statute specifies otherwise, a court's review of

---

[1] Plaintiffs even go so far as to say that "there is no administrative record for ESA claims." Pls. Opp. at 6. But "it is a far cry to state that [*Washington Toxics* and *Kraayenbrink*] require a district court to engage in de novo review of the record, or that the APA's standards are inapt guidelines." *Sierra Club v. McLerran*, No. 11-1759RSL, 2012 WL 5449681, at *2 (W.D. Wash. Nov. 6, 2012); *see Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2006) ("Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making.").

3

an agency action is limited to the APA's "arbitrary and capricious' standard of review and "confined to the administrative record." *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963); *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1193-95 (9th Cir. 2000). Because the ESA lacks an internal standard or scope of review, a court reviewing an ESA citizen suit must employ both the APA's standard of review and scope of review. The connection between the standard and scope of review is underscored by the APA itself, which specifies that "[i]n making the . . . determination" of whether an action is arbitrary, capricious, or otherwise not in accordance with the law, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. This approach was confirmed by the Ninth Circuit in *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006, 1017 (9th Cir. 2014). In *Karuk Tribe*, the court considered an ESA citizen suit claim challenging a failure to consult under Section 7 and stated that "this is a record review case" and that summary judgment could be granted to either party "based upon [the court's] review of the administrative record."[2] *Id.* at 1017; *id.* ("An agency's compliance with the ESA is reviewed under the Administrative Procedure Act.").

Plaintiffs assert that district courts have "repeatedly followed and applied this rule." Pls. Opp. at 4. As an initial matter, it is not clear which rule Plaintiffs are referring to. In any event, the cases they cite do not support their position. In *Hoopa Valley Tribe v. NMFS*, 230 F. Supp. 3d 1106, 1126 (N.D. Cal. 2017) and *Yurok Tribe v. Bureau of Reclamation*, 231 F. Supp. 3d 450, 470 (N.D. Cal. 2017), the court concluded that although it was denying the motion to strike, it would "voluntarily limit [its] review to those documents included in the record." The quoted

---

[2] Both the trial court and the original panel decision in *Karuk Tribe* addressed the admissibility of extra-record evidence and applied the approach advanced here: such evidence is admissible only under the limited APA exceptions. *Karuk Tribe of Calif. v. U.S. Forest Serv.*, 640 F.3d 979, 983-84 n.3 (9th Cir. 2011); *Karuk Tribe of Calif. v. U.S. Forest Serv.*, 379 F. Supp. 2d 1071, 1087, 1090 (N.D. Cal. 2005).

4

language from *Pacificans for a Scenic Coast v. California Department of Transportation*, 204 F. Supp. 3d 1075, 1085 (N.D. Cal. 2016) is inapt because it was made in response to the assumption that the APA's "final agency action" requirement applies to ESA citizen suit claims. The court in *Ellis v. Housenger*, No. C-13-1266 MMC, 2015 WL 3660079, at *4 n.8 (N.D. Cal. June 12, 2015) noted that although it was denying motions to limit review to the record, "[s]uch finding is without prejudice to any party's objecting to extra-record evidence on a ground other than an assertion that the review of the Fifth and Sixth Claims is governed by the APA." As such, the court made clear that a party would still need to meet some threshold of relevance in order for the court to consider documents outside the record. Plaintiffs' reference to *WildEarth Guardians v. Jeffries*, 370 F. Supp. 3d 1208, 1227 (D. Or. 2019) overlooks the court's determination that "[f]or purposes of ESA review, [plaintiff] has not demonstrated that the proffered maps are relevant to the parties' ESA claims, or that they would contribute to the Court's analysis or decisionmaking, beyond what is already before the Court in the Administrative Record." The remaining cases do not provide any support for how the Court should evaluate the 35 documents at issue, and thus do not help advance Plaintiffs' position or cure their lack of explanation. Plaintiffs also ignore cases that reach a different conclusion. *See* Mot. at 4; *see also Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, 384 F. Supp. 3d 1111, 1119 (N.D. Cal. 2019); *WildEarth Guardians v. U.S. Forest Serv.*, No. CV-10-00385-TUC-DCB, 2011 WL 11717437, at *1 (D. Ariz. Apr. 26, 2011); *Ctr. for Biological Diversity v. Wolf*, 2020 WL 1275729.

       To be clear, applying the record review rule to ESA citizen suit claims does not preclude a court from considering extra-record evidence. However, before a court considers it, a plaintiff must satisfy one of the exceptions to the record review rule. As described in the Motion, the

5

Court should strike Plaintiffs' proffered documents because they have failed to demonstrate how any of the documents fall within one of the exceptions. Mot. at 5-15.

Plaintiffs have also failed to demonstrate how any of the documents meet the relaxed "broad relevance standard" they assert applies. Pls. Opp. at 5. To begin with, even if that standard applied its scope is cabined.[3] Indeed, in the case that Plaintiffs rely on, *WildEarth Guardians v. Federal Emergency Management Agency*, No. CV 10-863-PHX-MHM, 2011 WL 905656, at *4 (D. Ariz. Mar. 15, 2011), the Court warned the parties "that they should not attempt to strain the meaning of the phrase relevant" and added that "[s]upplementation should be limited to those documents which truly bear on the merits of the case and that are not duplicative of evidence already in the record, better considered through judicial notice, or legal authority that can be referenced as a matter of law." The 35 extra-record documents proffered by Plaintiffs are not relevant, either because the information contained in the documents is already in the record or, more fundamentally, even if the documents supported the point for which they are offered, that point has no relevance to the merits of the case.

***Exhibits 1 and 3*** are proffered to "highlight" a gap during which the Food and Drug Administration (FDA) did not communicate with the Fish and Wildlife Service (FWS) and the National Marine Fisheries Service (NMFS). But the ESA does not require communication when the action agency makes a "no effect" determination, and even where, as here, the action agency communicates with the Services, the ESA does not require any specific frequency of discussion. Thus, the documents are irrelevant to assessing whether FDA satisfied its obligations under the ESA. Moreover, an examination of the record shows that the seven-year "gap"—in the nearly

---

[3] Federal Defendants cited *Northwest Coalition for Alternatives to Pesticides v. EPA*, 920 F. Supp. 2d 1168, 1176 (W.D. Wash. 2013) in support of the proposition that there are still limits to supplementation even if the standard has been relaxed.

*20-year* review period—was the time during which FDA was considering food and target animal safety, and whether recombinant deoxyribonucleic acid (rDNA) product produced its claimed effect. *See generally* ECF No. 71, rows 61-183. Also during this time period, AquaBounty Technologies was developing "grow-out" conditions for AquAdvantage Salmon (AAS), which was a necessary predicate to evaluation under the ESA. FDA-004898, FDA-004908-09.

Plaintiffs assert that Exhibits 1 and 3 are relevant to understanding the "full picture," Pls. Opp. at 6, but the record provides the full picture of the interaction between FDA and the Services. *See* Mot. at 6-7. Plaintiffs also challenge Federal Defendants' argument that a lower-level employee's depiction of a meeting is not relevant, Pls. Opp. at 6,[4] but they still fail to meet their burden of showing why *these* two emails truly bear on the merits of the case. Moreover, Plaintiffs reference two cases involving the same official at the Department of the Interior (DOI); these cases are distinguishable because they were about allegations of a higher level official employing "intimidation tactics" and involved personnel at the same agency. *W. Watersheds Project v. FWS*, 535 F. Supp. 2d 1173, 1188 (D. Idaho 2007).

***Exhibits 2, 15, 16-18, 23-24*** express concerns from FWS staff that are not relevant because they duplicate information already in the record.[5] The varying views of FWS staff were communicated to FDA at several junctures over the course of the application's review, and FDA

---

[4] Plaintiffs note that Federal Defendants cite an out-of-circuit case, yet in the very next sentence, Plaintiffs cite a case from a district court in the Tenth Circuit. Pls. Opp. at 6.

[5] Plaintiffs' assertion that Exhibit 18 is the final version of Exhibit 16, Pls. Opp. at 11, is unsupported; in fact, textually, Exhibit 18 appears to pre-date Exhibit 16 because it does not reflect receipt of FDA's October 22, 2010 letter clarifying its "no effect" letter. *See* Mot. at 11. The unreliability of these undated and unsigned documents is another reason for the Court to reject them. Also, regarding note 3 on page 11 of Plaintiffs' opposition, FDA-029454 is not the same as Exhibit 16. Thus, that FDA-029454 is part of the administrative record provides no basis for Plaintiffs' failure to abide by the procedures in the Amended Protective Order for Exhibit 16. Federal Defendants do not understand Plaintiffs' reference to note 3 in their discussion of Exhibit 24—none of the documents referenced in that note are the same as Exhibit 24.

7

substantively addressed those concerns in the final Environmental Assessment (EA) and response to Plaintiffs' 2011 Citizen Petition. *See* Mot. at 6-7, 10-13. Plaintiffs dismiss Federal Defendants' reference to the EA as an "attempt to waive [sic] FWS's concerns aside" that has "no bearing" on the Motion. Pls. Opp. at 7. But whether the agency considered "all relevant factors" is key to ascertaining admissibility under the record review exceptions, and even under a relevance standard, a connection between the proffered documents and the merits is critical.

*Exhibit 4* provides no new information for evaluating FDA's initially incorrect characterization of its ESA determination.

*Exhibits 5, 7, 8, 10, 13, 14, 25-26, 28, 31, 33, and 34* all relate to the possible importation of genetically engineered (GE) eggs into the United States, which is not permitted under the approval challenged by Plaintiffs in this case. Thus, the documents are not relevant to the Court's ESA inquiry. *See* ECF No. 244 at 28-30. Plaintiffs assert that the potential for future importation is "highly relevant" to their argument about the scope of FDA's ESA assessment, *e.g.*, Pls. Opp. at 8, but this conclusory assertion offers no explanation for why the Court needs any documents on this issue, much less these particular documents, to evaluate the scope of FDA's assessment.[6]

*Exhibits 6 and 11* are documents gathered for an internal FWS briefing in 2013. In terms of Exhibit 6, the record shows that FDA concluded the risk of escape was "very low" (*see* FDA-022437); the analysis of containment in FDA's final EA does not rely on farmed salmon (*see* FDA-022435-36; FDA-022421); and seawater production is not at issue here because AAS eyed-egg production and grow-out may only take place in the physically-contained, freshwater culture facilities specified in an FDA-approved application. 21 C.F.R. § 528.1092(d). Exhibit 11

---

[6] It is also notable that when ABT received supplemental approval for a grow-out facility in Indiana that involved importation of GE eggs, Plaintiffs did not seek to amend their complaint.

recounts the comments FWS provided to FDA, which belies any assertion that these documents contain information that is not already in the record. ECF No. 236-11 at 10.

*Exhibit 9*, to the extent it addresses AAS, reaches conclusions consistent with FDA's Finding of No Significant Impact (FONSI). *See* Mot. at 8. Plaintiffs have not shown how the publication sheds light on any relevant factor overlooked by FDA.

*Exhibit 12* raises concerns that were considered by FDA in its final EA, *see* Mot. at 9-10. Plaintiffs' assertion that FDA's "admission" of their relevance means they should be considered by the Court reflects a misapplication of the exceptions to the record review rule or the relaxed standard outlined in *WildEarth Guardians*, which support consideration to the extent not duplicative of information already in the record.

*Exhibit 19* is an email from one FWS staff member with "fairly limited expertise with salmon" advancing the view that "safeguards against escapement should be fool proof." In denying Plaintiffs' 2011 Citizen Petition, FDA responded to that view, presented in FWS emails of the same vintage attached as exhibits to the Petition (FDA-2011CP-117). *See* FDA-2011CP-140. Plaintiffs offer no explanation for why this particular email is needed.

*Exhibits 20 and 35* contain concerns from the National Oceanic and Atmospheric Administration (NOAA) and FWS that were addressed by FDA in the final EA and FONSI. *See* Mot. at 11-12, 15. Plaintiffs have offered no response to this point.

*Exhibit 21* is an unverified account of a snippet of 2011 Congressional testimony, which Plaintiffs argue mischaracterizes NMFS's response to FDA's "no effect" determination. *See* Pls. Opp. at 13. But even if the testimony were recounted accurately, it is irrelevant to the Court's consideration of NMFS's response, which is in the record (FDA-017258) and presumably will be evaluated based on its contents and relevant case law. *See* ECF No. 244 at 25.

*Exhibit 22* is a 2010 email exchange among FWS staff, the first page of which already appears in the record. FDA-2011CP-0025. That escape and potential impact on "native stocks" is one FWS Region's or one staffer's "greatest concern," Pls. Opp. at 13, is not legally relevant to the Court's consideration because FWS's final response to FDA is in the record. FDA-015785.

*Exhibit 27* is a 2012 email exchange between NOAA staff explaining the agency's usual policy of not concurring in action agency "no effect" determinations. However, NOAA's policy is not at issue in this case. And, as discussed in the response to Exhibit 21, NMFS's response letter is in the administrative record, FDA-017258, and speaks for itself.

*Exhibit 29* is a 2010 internal NOAA email setting a meeting. It contains no substantive information and can have no bearing on the merits of the case; thus, it is irrelevant.

*Exhibit 30* is a 2010 email exchange between DOI and the U.S. Geological Survey. The questions from the exchange highlighted by Plaintiffs, Pls. Opp. at 14, are exactly the questions FDA addressed in the final EA. *See* ECF No. 244 at 8-11. Thus, Exhibit 30 is not relevant because the information contained therein is already in the administrative record.

*Exhibit 32* is an email chain in which Plaintiffs highlight a statement by an FWS staffer that they contend evidences a misunderstanding of the approval. Pls. Opp. at 15. Though the salmon produced under the approval may not have "come in a can," they could only come into the country as eviscerated fillets; the approval does not permit the import of live GE eggs or fish.

## CONCLUSION

The Court should grant Federal Defendants' Motion to Strike Extra-Record Evidence for the reasons stated herein and in the Motion.

10

Dated:  March 27, 2020                           Respectfully submitted,

| | |
|---|---|
| OF COUNSEL | JOSEPH H. HUNT<br>Assistant Attorney General |
| STACY CLINE AMIN<br>Chief Counsel<br>Food and Drug Administration<br>Deputy General Counsel<br>United States Department of Health<br>  and Human Services | MARY M. ENGLEHART<br>Trial Attorney, Maryland Bar #0712110232<br>Consumer Protection Branch<br>United States Department of Justice<br>450 Fifth St., N.W., Suite 6400 South<br>Washington, D.C.  20530<br>Tele:  202-307-0088/Fax:  202-514-8742 |
| ANNAMARIE KEMPIC<br>Deputy Chief Counsel, Litigation | Mary.Englehart@usdoj.gov |
| LESLIE COHEN<br>BARBARA ALKALAY<br>Associate Chief Counsels<br>United States Department of Health<br>  and Human Services<br>Office of the General Counsel<br>Food and Drug Division<br>Food and Drug Administration<br>1451 Rockville Pike<br>WOC2, Rm. 2208<br>Rockville, MD  20852<br>Tele: (301) 796-05514 (Cohen)<br>Tele: (301) 348-3085(Alkalay)<br>Leslie.cohen@fda.hhs.gov<br>Barbara.alkalay@fda.hhs.gov | JEAN E. WILLIAMS<br>Deputy Assistant Attorney General<br><br> /s/ *Frederick H. Turner*<br>FREDERICK H. TURNER<br>Trial Attorney<br>MARISSA A. PIROPATO<br>Trial Attorney (Mass. Bar #651630)<br>United States Department of Justice<br>Environment & Natural Resources Division<br>Benjamin Franklin Station, P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Tele:  202-305-0470/Fax:  202-305-0506 (Piropato)<br>Tele:  202-305-0641/Fax:  202-305-0275 (Turner)<br>Marissa.piropato@usdoj.gov<br>Frederick.turner@usdoj.gov<br><br>*Attorneys for Federal Defendants* |

## ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I attest that I am the ECF user whose user ID and password are being used in the electronic filing of this document.

> /s/ *Frederick H. Turner*
> Frederick H. Turner

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 2020, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

> /s/ *Frederick H. Turner*
> Frederick H. Turner